James P. KNIGHT, Jr., and Annie
Lou Knight, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 73J–213(R).

United States District Court,
S. D. Mississippi,
Jackson Division.

May 20, 1975.

James P. Knight, Jr., Jackson, Miss.,
for plaintiffs.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., for defendant.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

This is an income tax recovery case in which all jurisdictional and venue requirements have been met by the timely filing of claims for refund, followed

by the rejection of said claims by Internal Revenue Service (IRS). The case has been submitted to the Court on the pleadings, an agreed statement of facts appearing in a pre-trial order and exhibits referred to therein, a stipulation to which are attached certain exhibits, the deposition of Thomas R. Ward, a member of the law firm of Ward, Mestayer and Knight, a partnership during the period of time involved herein, and on briefs.

As set out in the pre-trial order, the following facts are established by the pleadings, stipulation or admissions of counsel:

### I.

Plaintiffs, James P. Knight, Jr., and Annie Lou Knight, husband and wife, reside at 5975 Waverly Drive, Jackson, Mississippi, and the defendant is the United States of America.

### II.

This is an action for recovery of United States income taxes, and this Court has jurisdiction by reason of 28 U.S.C., Sec. 1346(a).

### III.

Plaintiffs timely filed their United States income tax returns for the calendar years 1969 and 1970, and paid the amounts of income tax shown to be due thereon, i. e., $3,395.33 for 1969 and $3,022.04 for 1970. On May 24, 1973, plaintiffs paid the following additional assessments for these years, which assessments arose from examination of the aforesaid income tax returns:

|  | 1969 | 1970 |
|---|---|---|
| Income tax | $ 529.42 | $ 229.19 |
| Interest | 98.63 | 28.95 |
| Totals | $ 628.05 | $ 258.14 |

All of the aforesaid totals of assessed income tax and interest are at issue.

### IV.

In addition to the aforesaid amounts, plaintiffs overpaid their 1969 income tax resulting from failure to claim distributable losses of $648.87 from Subchapter S corporations in which the husband was a stockholder, and $25.96 additional medical deduction allowable as a result of said losses. The refund due therefrom, plus the amounts in paragraph III above, make up the total of $1,071.77 refund claimed and demanded in this suit, and the portion thereof attributable to said losses is not at issue herein.

### V.

On December 31, 1968, Ward, Mestayer & Knight, a partnership engaged in the practice of law in which plaintiff husband was a partner, adopted a profit sharing plan with Hancock Bank, Gulfport, Mississippi, as trustee. By letter dated November 17, 1970, the District Director of Internal Revenue, Jackson, Mississippi, determined that said plan as originally constituted met the requirements of Section 401(a) of the Internal Revenue Code, that the trust created thereby was exempt from tax under Section 501(a) of the Code, and that employer contributions under the plan were deductible from income subject to Section 404 of the Code. Cash contributions of $7,500.00 ($2,500.00 for each of the three partners) were made for the year 1968.

### VI.

In late 1969, Sanderson Farms, Inc., one of the clients of the law firm, offered to sell 1,500 shares of its capital stock to Thomas R. Ward for $17,-580.00. The offer flowed to Mr. Ward personally; however, in recognition of the fact that it came to him as a result of partnership activities, he made it available to the partnership and it was decided by the partners that the profit sharing trust should be the vehicle of ownership.

### VII.

At the date the offer to allow the partners to purchase the stock was

made, the trust had only $7,500.00 in assets, this being the amount contributed to it for the year 1968. The trustee was instructed to transmit this amount to Thomas R. Ward, who borrowed $10,000.00 from the Citizens National Bank, Meridian, Mississippi, on behalf of the partnership, added $80.00 of partnership funds thereto, and purchased the stock. Within a day or two thereafter, he executed a declaration of trust on October 6, 1969, in favor of Hancock Bank, and delivered the declaration and stock certificate to said bank. The Hancock Bank thereafter carried this stock as corpus of the trust fund until James P. Knight, Jr., withdrew from the partnership in December, 1971. Plaintiffs' portion of the trust assets were then transferred to First National Bank, Jackson, Mississippi, as trustee of Mr. Knight's profit sharing plan.

## VIII.

The partners deducted $7,500.00 ($2,500.00 each) on their 1969 individual income tax returns and $2,580.00 ($860.00) each on their 1970 returns, this being the total of $10,080.00 referred to hereinabove.

## IX.

The Internal Revenue Service subsequently determined that an excess contribution in the amount of $2,580 had been wilfully made to the trust in 1969, and, alternatively, that if the $2,580 represented a loan from the beneficiaries or a contribution of stock to the trust, it was a prohibited transaction within the meaning of Section 503(g)[j].(1)(D) of the Internal Revenue Code of 1954.

The parties also agree that contested issues of fact are as follows:

1. Whether the amount of $2,580 over their $7,500 deductible contribution flowing from the partners of Ward, Mestayer and Knight to their retirement trust was a loan or whether this amount represented an excess contribution to the retirement trust.

2. If, and only if, the Court determines that the $2,580 represented an excess contribution rather than a loan, then whether such excess contribution was wilful.

3. Whether there was a transfer in 1969 of cash or stock to the trust, and if the Court determines that the transfer was of stock, whether this is a prohibited transaction under Section 503(j)(1)(D) of the Internal Revenue Code of 1954.

The only contested issue of law is as follows—if the Court determines it to be a fact that $2,580 represents a loan made by the partners to the retirement trust, then whether such loan was a prohibited transaction within the terms of Section 503(j)(1)(D).

One additional fact, conceded by the government in its brief, is that Annie Lou Knight, co-plaintiff with her husband, is a party to the action merely because she signed the 1969 and 1970 tax returns jointly with her husband, James P. Knight, Jr., who is considered to be and is referred to as the plaintiff herein.

In arriving at the additional assessments for the years 1969 and 1970 as reflected on IRS Form 4549, "Income Tax Audit Changes", an exhibit to the pre-trial order, the examining officer added as taxable income to plaintiff in 1969 the full sum of $2500 which plaintiff had claimed as his retirement plan deduction for that calendar year. After adjusting for a loss of $648.87 attributable to losses from Small Business Corporations and adjusting to add $74.04 designated as medical deductions, these last two amounts, not in issue here, the IRS examining officer determined that plaintiff had a statutory deficiency for 1969 of $529.42, plus interest. In arriving at the additional assessment for the year 1970, the examining officer added as taxable income in 1970 the sum of $860.-00 claimed as his retirement plan deduction for 1970. The Court has made this

analysis for its own guidance inasmuch as the first two factual issues and the sole legal issue, agreed upon by the parties and listed above, appear to be aimed only at the status of the $2,580 claimed by the three partners (one-third claimed by plaintiff) as a retirement plan deduction for the calendar year 1970, the government claiming that said sum was an excess contribution in 1969, or, alternatively, that it was a loan constituting a prohibited transaction. If the Court is correct in its analysis, then it follows by reason of the disallowance of $2500 in 1969 and $860 in 1970 to plaintiff as retirement plan deductions that the third factual issue is addressed to whether the total of the two, $3360, is a prohibited transaction as a transfer of stock, which, if so, occurred in 1969, in which event it seems to the Court that the government is inconsistent with its own theory in not assessing the entire amount of $3360 as a deficiency in the year 1969. Be that as it may, the Court treats the issues as raised. As to the third factual issue—whether the transfer in 1969 was of cash or stock—assuming that the transfer was of cash, a finding the Court reserves to that issue, the Court finds that the sum of $2580 contributed to the trust was an excess contribution made in the tax year of 1969 as claimed by the government. Plaintiff and the other two law firm partners as owner-employees of the trust by no means intended for this sum to be so treated. As tax attorneys, they were and are well aware that the maximum, annual, deductible contribution to their trust is the lower of $2500 each or 10 per cent of the taxable income of each. Not only is this a statutory requirement, but their "Self-Employed Retirement Plan and Trust Agreement" attached to the pre-trial order, so provided. It is clear to this Court in the explanation attached to plaintiff's IRS Form 843 Claim, in turn attached to his complaint, and from his affidavit, the deposition of Ward, one of the three partners, and from the stipulated facts and exhibits, that the three partners and the trustee

bank treated the entire transaction as a loan of cash to the trustee with which to pay for the 1500 shares of stock in Sanderson Farms, Inc., for a total price of $17,580. In order to pay for this stock, the trustee delivered to Ward the sum of $7500.00, the partnership contribution to the trust for the year 1968; Ward borrowed $10,000.00 from a bank in Meridian, Mississippi on behalf of the partnership to which was added $80.00 of partnership funds for a total of $17,580.00 for the purchase price of the stock. As a part of the transaction, Ward signed a Declaration of Trust, a copy being attached to his deposition whereby he bound himself to deliver the stock to the trustee upon payment of the sum of $17,580.00 by the trust. Of this amount $7500.00 replaced the 1968 contribution; the balance was considered as a loan from the partners to the trust, with $7500.00 allocated as the 1969 partnership contribution to the trust, and the balance of $2580.00, allocated as the 1970 partnership contribution. The entire transaction took place in the latter part of 1969. The stock certificate was dated September 17, 1969, bearing Ward's name; he executed his declaration of trust on October 6, 1969 in favor of the trustee of the retirement plan; and the certificate was shortly thereafter delivered to the trustee-bank where it was carried as corpus of the trust fund until December 1971 when plaintiff withdrew from the partnership his portion of the trust assets being transferred to another bank as trustee for his individual profit sharing and retirement fund.

The government contends that no matter how plaintiff attempts to explain the transaction, whether as a transfer of stock or money, an amount equalling $2580.00, over and above the contribution of $7500.00 was received by the trust in 1969 and was therefore an excess contribution as well as a prohibited transaction. The government points to a statement by an employee in the trust department of the trustee bank, attached to IRS Form 990–P, filed by the bank

on behalf of the trust wherein this employee stated: "The owner-employees of this retirement trust do their own investing or advise us what to invest in. Stock was contributed to the plan in 1969 and 1970. This was stock of Sanderson Farms, Inc. of Laurel, Mississippi." The Court does not give the significance to this statement that the government does; however, the government adds to this the fact that the partnership had no documents supporting their contention that the transaction involved nothing more than a loan of money to the trust from the partnership, repaid when the stock was delivered, the government noting the lack of evidence of a loan, such as a promissory note, the receipt of interest, partnership minutes reflecting the transaction as a loan, or the inclusion of the sum of $2580.00 in their accounts receivable claimed in the partnership return of 1969. As opposed to these contentions, plaintiff points out that the trustee's report on IRS Form 990-P was not made by trustee bank personnel who was familiar with the transaction, but an employee not familiar with the trust agreement or the transaction; admits the partnership did not go through the formality of having the trustee execute a promissory note in favor of the partnership; saved the fund money by charging no interest; admits that the partnership kept no minutes, saying that it never had kept minutes during its existence; but denied that the sum of $2580.00 was not included in its partnership receivables.

■ The Court has examined every fact surrounding this transaction, including the facts admitted in the pre-trial order and in the stipulation, has gleaned other undisputed facts from all of the evidence, has considered the opposing conclusions from these facts urged by the parties, and has come to its own conclusion that the partnership had no intention of circumventing the Internal Revenue Act, IRS regulations or its own trust agreement by making an excess contribution to the fund. Nonetheless, the Court finds that the transaction did occur in 1969, was not one which permitted a carry over to 1970 under the Act or IRS regulations,[1] and, therefore IRS was justified in treating the sum of $2580.00 as an excess contribution during the tax year 1969.

■ The Court does not agree with the government's contention that the excess contribution was willfully made. Using cases cited in its brief, the government takes the position that the mere fact that an excess contribution occurred is sufficient to show willful intent. On the facts of this case, the Court finds that due to lack of proper documentation or due to the mechanics adopted for the transaction, the result was an unintentional excess contribution for which the partnership should not be penalized in the disruption of the trust fund. The partners' intention was to consummate a loan to the trust for the value of the stock, not to destroy the trust which they established for their own benefit.

Although the completion of the transaction resulted in the ultimate transfer of stock to the trust fund, the Court has indicated above that it is completely convinced that the transfer of $10,080.00 (the maximum deduction of $7500.00 plus the $2580.00 as excess in 1969) was in the form of cash borrowed by Ward from a Meridian bank on behalf of the trust in a total amount to re-pay the maximum deduction allowed for 1968, pay the maximum allowed in 1969, with the balance of $2580.00 to apply on the maximum deduction for 1970, notwithstanding the fact that the stock was actually delivered to the trustee bank in 1969. Accordingly, the sum of $2580.00 represented a cash transfer rather than a transfer of stock. In this connection the Court notes a letter from Wyatt Davis, Controller of Sanderson Farms, Inc., attached to Ward's deposition, stating that the sale of stock to Mr. Ward at $11.72 per share was based on the adjusted book value of the stock outstand-

---

1. Section 1.404(e)–1(b)(3)(ii) of the Regulation.

ing on the company's records as of July 31, 1969. Davis stated that, as Sanderson Farms, Inc., is a "closely held" corporation, there had been no substantial sales by stockholders. However, of sales he knew about, 300 shares were sold in July 1970 for $15.00 each and 1200 shares were sold in January 1971 for $15.00 per share. The Court finds that the trust was not cheated or short-changed in any respect in the sales price of the stock acquired by Mr. Ward for the benefit of the partnership, and that the partnership had every reason to believe that the stock represented a good investment for the benefit of the trust.

Section 503(j)(1)(D) of the Internal Revenue Code provides that in case of a trust described in Section 401 (a), which is part of a plan providing contributions or benefits for employees some or all of whom are owner-employees who control the trade or business with respect to which the plan is established, the term "prohibited transaction" includes any transaction in which such trust, directly or indirectly, acquires for the trust any property from such owner-employee. The government relies on this section as well as Section 1.401–12(K)(1) of the IRS Regulations to insist that this transaction involved the transfer of property from the partnership to the trust and was therefore a prohibited trust. Section 1.401–12(K) (1) provides that the contribution, *other than money*, by the person who is the employer (*within the meaning of section* 401(c)(4) to a qualified trust forming a part of a plan which covers employees some or all of whom are owner-employees who control the trade or business with respect to which the plan is established is a prohibited transaction between such trust and the employer-grantor of such trust. As the Court has hereinabove found that the contribution

of $2080.00 constituted a cash loan, in other words, money, such is excepted from the prohibitory language of the regulation.

A last note is necessary. The government, in its brief, pointed out that from the partnership tax return for the year 1969, plaintiff's net earnings from self-employment was reported as $24,652.27. This being so, his allowable contribution to the trust in 1969 was limited to the lower of $2500.00 or 10% of such income, the latter being $2,465.23, and that he therefore made an excess contribution of $34.77 in addition to the excess contribution as found by the Court. Although the government has not assessed a tax on this excess, the Court notes that in his personal income tax return of 1969, in Part III of Schedule E, plaintiff reported his partnership income as $24,652.27, plus a gain on travel reimbursement in the sum of $376.47, for a total partnership income of $25,028.74, warranting a contribution to the trust fund in the maximum sum of $2500.00.

On the basis of the above facts and reasoning of the Court, the Court finds that the sum of $2080.00 was an excess contribution for the tax year 1969 and accordingly plaintiff's claim for a refund should be denied to the extent of the disputed item. The Court does not find that the excess was willfully contributed or that the transaction treated herein was a prohibited transaction within the proscription of the Internal Revenue Act and the Regulations as they pertain to this profit sharing and retirement trust fund, and accordingly, the penalties provided for a wilful excess contribution or for a prohibited transaction are not warranted.

An appropriate order or judgment may be submitted within the time prescribed by the local rules of the Court.